IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JENNIFER TRYON,

      Plaintiff,

  v.                                  CIVIL NO. 2:24-CV-15
                                              (KLEEH)

SNOWSHOE MOUNTAIN, INC.,

      Defendant.

MEMORANDUM OPINION AND ORDER
DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 72]

Pending before the Court is Defendant Snowshoe Mountain, Inc.'s motion for summary judgment. For the reasons discussed below, the motion is **DENIED**.

**I.   PROCEDURAL BACKGROUND**

The Plaintiff, Jennifer Tryon ("Tryon"), brings this personal injury action against the Defendant, Snowshoe Mountain, Inc. ("Snowshoe"), asserting one count of negligence. Tryon alleges that she sustained injuries during a mountain biking accident at Snowshoe. Specifically, she alleges that Snowshoe was negligent with respect to the design, construction, and maintenance of a bridge on one of its bike trails. She seeks compensatory damages, punitive damages, costs and attorney's fees, and prejudgment and post-judgment interest.[1] Snowshoe moved for summary judgment on

---

[1] Originally, Tryon also named Alterra Mountain Company U.S., Inc. ("Alterra") as a defendant, but Tryon voluntarily dismissed Alterra from the case. See ECF Nos. 8, 9.

**TRYON V. SNOWSHOE**                                              **2:24-CV-15**

## MEMORANDUM OPINION AND ORDER
### DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 72]

February 24, 2026.  See ECF No. 72.  The motion is fully briefed and ripe for review.  See ECF Nos. 77, 80.

## II.  UNDISPUTED FACTS

On July 5, 2022, Tryon wrecked her mountain bike on Snowshoe's "Easy Street" bike trail.  Compl., ECF No. 1, at 1.  The accident occurred while she was navigating a downhill "S" curve to the left onto a bridge.  Tryon Dep., ECF No. 73-1, at 53:16-24.  The bridge had no railings to prevent riders from going off of its right side. Compl., ECF No. 1, at ¶ 27.  It had begun to rain, and the bridge was especially slick.  Resp., ECF No. 77, at 2.  After riding onto the bridge, Tryon tried to steer her bike to the left toward the center of the bridge, but the bike did not respond.  Tryon Dep., ECF No. 73-1, at 53:20-24.  She slid off of the right side of the bridge, falling head-first over her bike into a rock-filled creek bed.  Resp., ECF No. 77, at 2.  Tryon sustained multiple spinal cord fractures and underwent surgeries.[2]  Compl., ECF No. 1, at ¶¶ 42-43.

Tryon had previously visited Snowshoe several times.  Tryon Dep., ECF No. 73-1, at 9:15-20.  She previously mountain biked on Easy Street in July 2020, when she rode the trail one time completely and a second time partially.  Id. at 11:9-16.  During the July 2020 visit, she rented bikes, a helmet, a jacket, chest

---

[2] Tryon states that her injuries are permanent.

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 72]**

protection, and other equipment directly from Snowshoe.  Id. at 13:2-10.  She also executed and signed a written rental waiver. Id. at 18:15-19.  Generally, she reads those "types of documents" before signing them.  Id. at 19:15-21.

In July 2021, Tryon returned to Snowshoe.  Id. at 21:7-12; 59:11-16.  During the July 2021 visit, she mountain biked on Easy Street one time completely and another time partially.  Id. at 37:5-8.  Tryon rode her own bike, but she rented protective gear from Snowshoe.  Id. at 37:13-17.  She also purchased lift tickets for herself and her son.  Id. at 37:24-38:1.

On July 5, 2022, the day of the accident, Tryon's lift ticket was attached to her bike.  Id. at 24:23-25:7.  Snowshoe requires all bikers on the trails to have a lift ticket.  Cline Dep., ECF No. 73-1, at 164:5-6.  The front of the lift ticket advises the ticket holder to read the "Release of Liability" on the back of the ticket.  Ticket, ECF No. 73-1.  The back of the lift ticket contains the following language in the section labeled "Release of Liability and Assumption of Risk":

- "I understand and expressly agree that as a condition of my use of the ski area and other facilities and/or participation in recreational activities at Snowshoe Resort, I will be exposed to inherent and other risks and dangers that may cause . . . serious bodily injury, including death."

**TRYON V. SNOWSHOE**                                                      **2:24-CV-15**

### MEMORANDUM OPINION AND ORDER
### DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 72]

- "These risks include, but are not limited to, the following: collisions or impacts with natural or manmade objects or other persons; variations in terrains; extreme weather conditions; equipment failure; wildlife; hidden obstacles; and all other risks, dangers, and hazards associated with . . . cycling, scenic lift rides and other recreational activities offered year-round at Snowshoe."

- "I therefore agree that the use of this ticket or the facilities at Snowshoe confirms absolutely my agreement to be bound by these terms and conditions whether I obtained my ticket myself or it was provided to me by someone else."

- "For the same reasons, I also agree to make no claim against Snowshoe Mountain, Inc. or any of its owners or employees for any injury or harm to me or my property."

- "By use of this ticket, I expressly agree and understand that I have assumed all risks and that Snowshoe Mountain, Inc. is released from any and all liability."

Release, ECF No. 73-1.  The bottom of the ticket's back side states in bold, **"PLEASE READ THE RELEASE OF LIABILITY AND ASSUMPTION OF RISK NOTICE ABOVE."**  Id.  The top section of the back side states in bold, **"PLEASE READ CAREFULLY!  USE OF THIS TICKET WILL AFFECT YOUR LEGAL RIGHTS."**  Id.

Tryon does not remember reading the release on the day of the accident.  Tryon Dep., ECF No. 73-1, at 34:8-15.  She agrees, however, that nothing stopped her from looking at the back of the

4

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 72]**

lift ticket.  Id. at 59:7-9.  She is also an experienced skier. Id. at 9:12-13.

Prior to Tryon's accident, Snowshoe had placed mesh on the Easy Street bridge.  Id. at 53:20-22.  The mesh serves two purposes: (1) it provides traction, and (2) it serves as a visual guide on where the riders should be.  Cline Dep., ECF No. 73-1, at 117:13-17.  Snowshoe's bike crew also travels the trails daily to inspect the course, including the bridges.  Id. at 67:2-7.  A more detailed inspection is done biweekly.  Id. at 72:14-18.

Tryon is, and was before the accident, the Chief Pharmacy Officer of Henry Ford Health.  Tryon Dep., ECF No. 73-1, at 135:16-17.  In that role, she is "responsible for making sure that medications are accessible, affordable, safe, and optimized for patients across the care delivery network."  Id. at 135:20-22. Tryon has continued working since the accident.  Id. at 136:2-6.

### III. DISPUTED FACTS

There appears to be a possible dispute as to whether Tryon signed a waiver.  Regardless, however, the waiver (if it exists) is unavailable.  Tryon testified that she rented equipment from Snowshoe for herself on the day of the incident.  Id. at 99:2-4. Snowshoe's Director of Risk and Business Operations, Preston Cline, testified that at Snowshoe, downhill mountain biking equipment cannot be rented without first signing a rental waiver.

**TRYON V. SNOWSHOE**                                                 **2:24-CV-15**

### MEMORANDUM OPINION AND ORDER
### DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 72]

Cline Dep., ECF No. 73-1, at 174:12–18.   Tryon does not recall completing a waiver agreement at the rental facility in July 2022. Tryon Dep., ECF No. 73-1, at 106:5–19.   Rental waiver agreements were completed for the others in her group: Brant Tryon, Sam Tryon, Sophia Tryon, and Noah Jennings.   Id. at 95:15–23; 104:1–8. Snowshoe, however, has been unable to locate a release signed by Tryon on July 5, 2022.   Cline Dep., ECF No. 77-10, at 179:17–20.

There also appears to be a dispute as to whether any similar incidents have occurred on the Easy Street bridge.   Snowshoe asserts that prior to Tryon's accident, no other incidents where a rider lost control and veered off the Easy Street bridge were reported either verbally or in an incident report.   Cline Dep., ECF No. 73-1, at 177:6–13.   Tryon claims that on July 24, 2021, a 13-year-old boy sustained a right hip contusion and a left forearm fracture when he went off of the right side of the bridge.   Incident Report, ECF No. 77-6.   Tryon also claims that on June 21, 2022, another 13-year-old boy went off of the right side of the bridge and sustained a closed head injury resulting in retrograde amnesia. Incident Report, ECF No. 77-7.   A Snowshoe employee also recalls an adult rider going off of the right side of the bridge.   Daniels Dep., ECF No. 77-5, at 36:20–38:6.

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 72]**

### IV.  STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).

"When the moving party has carried its burden . . . , its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Id. at 586 (citations omitted).  Rather, the court must ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S.

**TRYON V. SNOWSHOE**                                              **2:24-CV-15**

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 72]**

242, 251–52 (1986).  At its core, the summary-judgment process examines whether a trial is needed.  See id. at 250.

### V.   DISCUSSION

Snowshoe argues that Tryon executed a lift ticket agreement wherein she agreed to release Snowshoe from liability and assumed the risks of the mountain biking trail.  In the alternative, if the Court does not dismiss Tryon's sole claim, Snowshoe argues that the record contains no evidence that it acted with the requisite conduct to warrant punitive damages.  Finally, Snowshoe also alternatively argues that Tryon is precluded from claiming lost future earnings because she has not submitted expert testimony.  The Court disagrees with all three contentions.

**A.   Under the circumstances, Tryon did not expressly and clearly agree to accept the risk of harm arising from Snowshoe's negligent or reckless conduct.**

Generally, pre-injury exculpatory releases are disfavored and strictly construed against the party seeking a release.  See Krazek v. Mtn. River Tours, Inc., 884 F.2d 163, 165 (4th Cir. 1989) ("As a general rule of contract law, contracts releasing a party from liability resulting from his own negligence are looked upon with disfavor and are strictly construed against the releasee.").  Still, the Supreme Court of Appeals of West Virginia "has long held that waivers, also known as exculpatory agreements, are normally upheld when they are freely entered into by parties of

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 72]**

equal bargaining power, so long as they do not violate a public interest or conflict with an applicable safety statute." Lutz v. Turner Broad. Sys., Inc., 187 F. Supp. 3d 706, 712 (N.D.W. Va. 2016) (citing Murphy v. N. Am. River Runners, Inc., 412 S.E.2d 504, 509 (W. Va. 1991)). Specifically, the Supreme Court has held that "in the absence of an applicable safety statute, a plaintiff who expressly and, under the circumstances, clearly agrees to accept a risk of harm arising from the defendant's negligent or reckless conduct may not recover for such harm, unless the agreement is invalid as contrary to public policy." Murphy, 412 S.E.2d at 508-09 (emphasis modified).

"In order for an express agreement assuming the risk to be effective, it must appear that the plaintiff has given his or her assent to the terms of the agreement." Id. at 510. When the agreement is prepared by the defendant, "it must appear that the terms were in fact brought home to, and understood by, the plaintiff, before it may be found that the plaintiff has agreed to them." Id. "[T]o relieve a party from liability for his [or her] own negligence by contract, language to that effect must be clear and definite." Id. (citation omitted). It must be evident that the terms of the agreement were "intended by both parties to apply to the particular conduct of the defendant which has caused the harm." Id. "[A] general clause in a pre-injury exculpatory

**TRYON V. SNOWSHOE**                                                          **2:24-CV-15**

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 72]**

agreement or anticipatory release purporting to exempt a defendant from all liability for any future loss or damage will not be construed to include the loss or damage resulting from the defendant's intentional or reckless misconduct or gross negligence, unless the circumstances clearly indicate that such was the plaintiff's intention."[3]  Id.

The Court, like the parties, has not located a West Virginia case recognizing the enforceability of a pre-injury exculpatory release that was not signed by the party against whom enforcement was sought.  See, e.g., Addis v. Snowshoe Mtn., Inc., No. 12-1537, 2013 WL 6152356, at *2 (W. Va. Nov. 22, 2013) (memorandum decision) (signed form entitled "RELEASE AND AGREEMENT NOT TO SUE"); Krazek, 884 F.2d at 164 (signed document entitled "Raft Trip Release and Assumption of Risk"); Lutz, 187 F.Supp.3d at 709 (signed form entitled "Participant Waiver and Release").

Here, although the language on the ticket is clear, the Court finds that Tryon's acceptance of it was not express.  Tryon was

---

[3] It is, of course, well-established under West Virginia law "[t]hat an acceptance may be effected by silence accompanied by an act of the offeree which constitutes a performance of that requested by the offeror[.]"  First Nat'l Bank of Gallipolis v. Marietta Mfg. Co., 153 S.E.2d 172, 176 (W. Va. 1967). "Where the offeree exercises dominion over things which are offered to him, such exercise of dominion in the absence of other circumstances showing a contrary intention is an acceptance."  Id. at 176-77.  Indeed, "[b]oth the offer and acceptance may be by word, act or conduct that evince the intention of the parties to contract."  New v. GameStop, Inc., 753 S.E.2d 62, 70-71 (W. Va. 2013).  The requirement of "express" acceptance here, however, is more demanding.

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 72]**

never "brought home to" the terms of her lift ticket, and it is not clear, given the record, that she understood them.  Given that pre-injury exculpatory releases are generally disfavored under the law, the Court will not uphold the release here, where the terms are included in a lift ticket that was not read by Tryon and was not signed.

>    B.    **Given Tryon's production of evidence that others have fallen off the Easy Street bridge, it is premature to dismiss a claim for punitive damages.**

Under West Virginia law,

> An award of punitive damages may only occur in a civil action against a defendant if a plaintiff establishes by clear and convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others.

W. Va. Code § 55-7-29(a).

As discussed, Snowshoe bike crews travel the trails daily to inspect aspects of the course, including the bridges, and a more detailed inspection is done biweekly.  Moreover, mesh is put down on the bridges to provide additional traction and to create a visual guide as to where the riders should be on the bridge.  Those facts weigh against an award of punitive damages.  Tryon, however, has produced evidence of other instances of individuals falling off of the bridge: that on July 24, 2021, a 13-year-old boy

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 72]**

sustained a right hip contusion and a left forearm fracture when he went off of the right side of the bridge (Incident Report, ECF No. 77-6), and that on June 21, 2022, another 13-year-old boy went off of the right side of the bridge and sustained a closed head injury resulting in retrograde amnesia (Incident Report, ECF No. 77-7).  A Snowshoe employee also recalls an adult rider going off of the right side of the bridge.  Daniels Dep., ECF No. 77-5, at 36:20-38:6.  The jury could rely on these instances to award punitive damages based on a "conscious, reckless and outrageous indifference to the health, safety and welfare of others."  Accordingly, granting summary judgment with respect to punitive damages would be inappropriate at this time.

> **C.    Because expert testimony on lost future earnings is not required in every case, it is premature to preclude Tryon from claiming lost future earnings at this stage.**

In Jordan v. Bero, the Supreme Court of Appeals wrote that "impairment of earning capacity is an item of permanent damages which . . . must be proved to a reasonable degree of certainty; it cannot be left to sheer speculation or surmise."  210 S.E.2d 618, 637 (W. Va. 1974).  Years later, in Adkins v. Foster, it found that the issue of diminished earning capacity should not have been submitted to a jury because the plaintiff "presented significant evidence of permanent injury but failed to present evidence of future economic ramifications of the injury to a reasonable degree

12

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 72]**

of certainty." 421 S.E.2d 271, 277 (W. Va. 1992). The Adkins Court relied on Howard v. Sanborn, a South Dakota case in which the court found that "where there is no expert testimony on present value, 'the jury must have some direction to help it intelligently reduce the award to present value.'" Id. at 735 (citing Howard v. Sanborn, 483 N.W.2d 796, 801 (S.D. 1992)). The Supreme Court noted that the lack of expert testimony on the issue of present value damages can lead to "confusion and guess-work verdicts." Id. (citing Howard, 483 N.W.2d at 801-02). The Adkins Court, however, also recognized that "expert economic evidence may not be necessary in every case[.]" Id. at Syl. Pt. 4.

The following year, in Liston, the Supreme Court wrote,

> Where a plaintiff wishes to quantify the loss of earning capacity by placing a monetary value on it, there must be established through expert testimony the existence of a permanent injury, its vocational effect on the plaintiff's work capacity, and an economic calculation of the monetary loss over the plaintiff's work-life expectancy reduced to a present day value.

Syl. Pt. 2, Liston v. Univ. of W. Va. Bd. of Trs. ex rel. W. Va. Univ., 438 S.E.2d 590 (W. Va. 1993). The Liston Court explained,

> What emerges from our cases is that loss of earning capacity can be proved in two ways. The first step in either approach is that the plaintiff must establish that there exists a permanent injury which can be reasonably found to diminish earning capacity. The plaintiff may then rely on lay or the plaintiff's own

**TRYON V. SNOWSHOE**                                                    **2:24-CV-15**

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 72]**

> testimony to acquaint the jury with the injury's impact on his or her job skills. When this is done, the jury may assess a general amount of damages for diminished earning capacity[.]

Id. at 594 (citations omitted). The Supreme Court later held that to determine impairment of earning capacity, it is necessary only to consider "the extent and permanency of the injury; the type of future employment, if any, in which the injured plaintiff could engage; and the difference between the amount plaintiff would have earned if the injury had not occurred and the amount plaintiff would be able to earn after having suffered the injury." Craighead v. Norfolk & Western Ry. Co., 475 S.E.2d 363, 373 (W. Va. 1996).

Here, Tryon has not disclosed any experts on economic damages. Tryon is the Chief Pharmacy Officer at Henry Ford Health and is "responsible for making sure that medications are accessible, affordable, safe, and optimized for patients across the care delivery network." Tryon Dep., ECF No. 73-1, at 135:20-22. Tryon had aimed to become the CEO of American Society Health System Pharmacists but alleges that she is no longer capable because of the accident. Id. at 136:19-24; 143:20-24. At this stage, given that expert testimony is not necessary in every case, it would be premature to grant summary judgment with respect to future earnings. Without expert testimony, Tryon may not be able to "quantify the loss of earning capacity by placing a monetary value

14

TRYON V. SNOWSHOE                                    2:24-CV-15

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 72]**

on it," Liston, 438 S.E.2d at 594, but she may still be able to seek "a general amount of damages for diminished earning capacity," consistent with Liston and Adkins.

### VI.   CONCLUSION

For the reasons discussed, the motion for summary judgment is **DENIED** in its entirety [ECF No. 72].

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: June 16, 2026

_Tom 8 Kleeh_
_____
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA